UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| SUSAN LILES | NO: 2:14-CV-03161 |
| VERSUS | JUDGE DONALD E. WALTER |
| BURKES OUTLET STORES, LLC | MAGISTRATE JUDGE KATHLEEN KAY |

MEMORANDUM RULING

Before the court is the motion to dismiss pursuant to Rule 12(b)(6), [Doc. #7], filed by defendant Burkes Outlet Stores, LLC ("defendant"). Plaintiff Susan Liles ("Liles") opposes the motion. [Doc. #15]. For the following reasons, the motion is **GRANTED**.

I. BACKGROUND

Liles was employed at defendant's store located in DeRidder, Louisiana for almost six years, eventually attaining the position of store manager. [Doc. #2, p. 2]. In May 2013, Demetria Thorne ("Thorne") became the district manager with direct supervisory authority over Liles. *Id.* Liles is a white female; Thorne is a black female. *Id.*

Liles claims that, once Thorne became her district manager, Thorne assigned "monumental" tasks and set unreasonable deadlines for their completion. *Id.* at 3. In support of this claim, Liles attaches two "punch lists" which detail various changes, improvements, and procedures that Thorne wanted to see implemented at the DeRidder store. *Id.* at 3, 9–14. On August 5, 2013, Liles complained to Richard Picone ("Picone"), a Burkes regional manager and Thorne's direct superior. *Id.* at 3, 8. Liles told Picone that she felt she was not receiving the proper guidance as to how to

comply with Thorne's new standards. *Id.* Liles also alerted Picone to a comment that Thorne allegedly made to Liles that "she was not sure about visiting my store because she was told that we are in a racist town." *Id.* at 8.

On August 7, 2013, Liles took a sick day in order to be with her son, who had apparently been hospitalized the night before. *Id.* at 4, 14–15. Liles briefly returned to work the following day, but she had to take a second sick day because she herself was suffering from a stomach virus. *Id.* at 4. The symptoms were apparently serious enough to warrant a visit to the emergency room.[1] *Id.* at 16–17. Liles was ordered to rest on the 8th and 9th, but was released to return to work August 10th. *Id.* at 16.

Liles was terminated as soon as she returned to work on the 10th. *Id.* at 4. Thorne informed Liles of her termination in person, and allegedly stated that her dismissal was based on "lack of progress" and "lowering employee morale." *Id.* at 4.

On October 21, 2013, Liles filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 4, 26. In her EEOC charge, Liles claimed that Thorne's stated bases for terminating Liles were a pretext, and that the termination was actually motivated by race. *Id.* at 26. Liles also alleged that she was terminated in retaliation for reporting Thorne's alleged comment regarding DeRidder being "a racist town." *Id.* After conducting an investigation, the EEOC dismissed Liles's claim and issued a right-to-sue letter. *Id.* at 27.

On October 3, 2014, Liles timely filed suit against defendant in the 36th Judicial District

---

[1] According to an incident report attached to the complaint, a Burkes employee had apparently found Liles on the floor of the store's bathroom, vomiting and faint. [Doc. #2, pp. 18–20].

Court for Beauregard Parish, Louisiana.² [Doc. #2]. Her petition advanced four claims for relief, based on the Louisiana Employment Discrimination Law, La. R.S. §§ 23:301 *et. seq* ("LEDL"), and the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").

Defendant timely removed the matter to this court.³ [Doc. #1]. In lieu of filing an answer, defendant filed the motion to dismiss now under consideration. [Doc. #7].

## II. RULE 12(B)(6)

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true and views those facts in the light most favorable to the plaintiff. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend

---

² The petition often refers to Thorne as a defendant, but it does not appear that Thorne was ever served with process at either the state or federal level. Accordingly, Burkes Outlet Stores is the only defendant in this matter.

³ Removal was proper under 28 U.S.C. § 1441(c)(1). The court has federal-question jurisdiction over the FMLA claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the LEDL claims under 28 U.S.C. § 1367(a).

to "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 664 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

In *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009), the Fifth Circuit held that neither *Twombly* nor *Ashcroft* created a heightened pleading standard for complaints, and that these cases instead only "explicate" Rule 8(a)(2), particularly because *Twombly* recognized that pleading requirements could only be changed through amendment of the Federal Rules. *Id.* at 258–59 (citing *Twombly*, 550 U.S. at 569 n. 14). Accordingly, Rule 8(a)(2) continues to only require a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). This standard is met by the "reasonable inference" the court must make, with or without discovery, that the facts set forth a plausible claim for relief under a particular theory of law, provided there is a "reasonable expectation that discovery will reveal that the elements of the claim existed." *Lormand*, 565 F.3d at 257 (quoting *Twombly*, 550 U.S. at 556).

Although a court's review is generally limited to the pleadings in deciding a motion to dismiss, the court may also consider documents attached to the motion and to the complaint, provided such documents are central to the plaintiff's claim and are referred to in the complaint. *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

## III. DISCUSSION

Even accepting all of Liles's factual allegations as true and viewing those facts in her favor, the court readily concludes that Liles fails to state any plausible claim for relief. The court will discuss each claim in turn.

### A. Claim One (Discrimination)

In her first claim, Liles argues that defendant

> materially changed a condition of her employment, without providing the necessary human resources, training materials, [or] supervisory guidance, that would have permitted her to attain the goals set by [Thorne]. Consequently, Defendants [sic] termination was pre-textual and in direct violation of company policy which provides a more expansive definition of harassment.

[Doc. #2, p. 5]. Defendant argues that it is "unable to decipher" what Liles is attempting to assert in claim one. According to defendant, the claim merely consists of a series of mixed and matched "buzzwords" from various employment-discrimination theories. [Doc. #7, pp. 2–3].

Although the court agrees that the claim is inartfully pled, the court does not find it indecipherable. Liles is claiming that defendant did not afford her an opportunity to meet Thorne's unreasonably high standards and that her termination was unfair. When read in context with the rest of the petition and the EEOC complaint, it is apparent that Liles believes her race was the real motivating factor behind her termination and that she is the victim of reverse discrimination.

The court recognizes that a claim of reverse discrimination "may state a cognizable employment discrimination claim." *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 312 (5th Cir. 1999) (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995); *Hopwood v. State of Tex.*, 84 F.3d 720 (5th Cir.1996), *cert. denied*, 518 U.S. 1033 (1996)). Nevertheless, the court concludes that such a claim is not plausible under the facts presented. Liles bases her claim on

the LEDL, which provides that it shall be unlawful for an employer "to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." La. R.S. § 23:332(A)(1). Insofar as the LEDL's prohibition against race discrimination is identical in scope to that of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII"), claims brought under the LEDL are governed by the same analysis applied to Title VII claims. *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

Even accepting Liles's factual allegations as true, nothing even remotely suggests that Thorne's treatment and eventual dismissal of Liles was motivated by racial animosity. In support of her claim, Liles relies heavily on defendant's failure to conduct a "counseling interview" in order to address any concerns about her work performance. [Doc. #2, pp. 5–6; Doc. #15, pp. 5–6; Doc. #15-1]. She claims that defendant's failure to hold this interview suggests that her termination was pretextual. *Id.* The Fifth Circuit has stated that "[a]lthough an 'employer's failure to follow its own policies may be probative of discriminatory intent,' we require discharged employees in discrimination cases to show, in addition, that they were treated differently than non-minority employees." *Hamilton v. AVPM Corp.*, 593 F. App'x 314, 321 (5th Cir. 2014) (unpublished) (internal citations omitted). Such a showing is necessary because "Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (quoting *Upshaw v. Dall. Heart Grp.*, 961 F. Supp. 997, 1002 (N.D. Tex. 1997)).

Here, Liles has not alleged that defendant applied the counseling interview policy in a racially discriminatory fashion. The court also finds that there is no reasonable expectation that discovery

will reveal such discriminatory application of the counseling interview policy. *Lormand*, 565 F.3d at 257 (quoting *Twombly*, 550 U.S. at 556). Thus, Liles's first claim for relief is not plausible, and dismissal is appropriate. *See Raj. v. La. State. Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (holding that, although plaintiff was not required to make out a *prima facie* case of race discrimination, dismissal was nonetheless appropriate under Rule 12(b)(6) because plaintiff did not allege "any facts, direct or circumstantial," that plausibly suggested race was the motivating factor behind adverse employment action).

## B. Retaliation

In her second claim for relief, Liles asserts that she was terminated in retaliation for telling Picone about Thorne's supposed comments regarding DeRidder being "a racist town."[4] Like the anti-retaliation provision of Title VII, Louisiana Revised Statute Section 51:2256 prohibits employers from retaliating against an employee who "has opposed a practice declared unlawful by [the LEDL] or because he has made a charge, filed a complaint, testified, or participated in any manner in any investigation, proceeding, or hearing under [the LEDL]."[5] La. R.S. § 51:2256.

---

[4] As defendants correctly point out, Liles did not file her EEOC charge until after she was fired. [Doc. #2, p. 26]. The only pre-termination activity that Liles engaged in is her report of Thorne's comment to Picone.

[5] Until quite recently, the LEDL did *not* explicitly provide an anti-retaliation cause of action for employees opposing discrimination based on race, color, religion, sex, or national origin. *See Martin v. Winn-Dixie La., Inc.*, 2015 WL 1281493 at *7 (M.D. La. Mar. 20, 2015). In *Martin*, Judge deGravelles acknowledged that the Louisiana legislature amended La. R.S. § 51:2256 in order to provide an anti-retaliation cause of action for opposing all practices made unlawful under the LEDL. *Id.* However, he also noted that the amendment did not become effective until August 1, 2014, and that the legislature was silent as to whether the amendment applied retroactively. *Id.* at *8. Accordingly, because the plaintiff in *Martin* filed both his EEOC charge and his complaint before the effective date of the statutory amendment, Judge deGravelles held that plaintiff's LEDL retaliation claim was barred. *Id.*

Although the court agrees with Judge deGravelles reasoning, this case presents a different scenario. Liles filed her EEOC charge on October 21, 2013, well before the effective date of the statutory amendment, [Doc. #2, p. 26], but she filed her complaint on October 3, 2014, after the amendment went into effect. *Id.* at 1. Accordingly, because Liles filed her complaint once La. R.S. § 51:2256 was effective in its current version, Liles has a statutory basis for asserting a retaliation claim under the LEDL.

Because Louisiana's anti-retaliation provision mirrors the federal version, the court will look to Title VII retaliation standards in order to analyze the sufficiency of Liles's claim. *DeCorte v. Jordan,* 497 F.3d 433, 437 (5th Cir. 2007).

In order to succeed on a retaliation claim under Title VII, the plaintiff must establish that: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Mattern v. Eastman Kodak,* 104 F.3d 702, 705 (5th Cir. 1997). The ultimate question is whether the defendant discriminated against that plaintiff because the plaintiff engaged in conduct protected by Title VII. *Long v. Eastfield College,* 88 F.3d 300, 304 n. 4 (5th Cir. 1996).

According to defendant, Liles did not engage in protected activity when she reported Thorne's comment, because Thorne's single comment was not a practice declared unlawful by the LEDL. [Doc. #7-1, pp. 4–6]. The court agrees. A plaintiff claiming retaliation must have a reasonable belief that the practices she opposed were unlawful. *Long,* 88 F.3d at 304 (citing *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. 1981). Although Liles does not state how Thorne's comment violated the LEDL, it appears that Liles believes the comment amounted to hostile-work-environment harassment. Such a belief is not reasonable.

A hostile work environment is present when the workplace "is permeated with discriminatory intimidation, ridicule, and harassment that is so severe or pervasive that it alters the conditions of employment and creates a hostile or abusive working environment." *Alleman v. La. Dep't of Econ. Dev.,* 698 F. Supp. 2d 644, 658 (M.D. La. 2010) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993). The work environment must be deemed "both objectively and subjectively offensive, one

that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2009) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (internal brackets omitted). In determining whether a work environment is "hostile" or "abusive" within the meaning of Title VII, courts must look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Even assuming that Thorne made the comment as alleged, Liles was not reasonable in believing that this single comment amounted to harassment. The statement was simply not severe. The statement was not directed at Liles, and thus it was not physically threatening or humiliating. Similarly, it does not appear that the statement was meant to ridicule Liles or intimidate her. At best, Liles found the statement to be a single offensive utterance, which does not constitute a hostile work environment. *Lauderdale v. Texas Dep't of Crim. Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007). Accordingly, claim two fails to state a plausible claim for relief and dismissal is warranted.

**C. FMLA Claim**

In her third claim, Liles alleges that, to the extent that she was fired for taking too much sick leave, defendant violated her rights under the FMLA, 29 U.S.C. §§ 2601, *et. seq.* [Doc. #2, p. 5]. Defendant argues that Liles has not alleged facts supporting an entitlement to leave under the FMLA. [Doc. #7-1, pp. 6–7].

In pertinent part, the FMLA provides that a covered employee shall be entitled to leave: (1) "in order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition;" or (2) if the employee suffers from "a serious

health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves -- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). According to Department of Labor regulations,[6] a serious health condition requiring continuing treatment includes, *inter alia*, "[a] period of incapacity of *more than three consecutive, full calendar days*, and any subsequent treatment or period of incapacity relating to the same condition . . . ." 29 C.F.R. § 825.115(a) (emphasis added). The regulations further define "inpatient care" as "an *overnight* stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in § 825.113(b), or any subsequent treatment in connection with such inpatient care." 29 C.F.R. § 825.114 (emphasis added).

Liles alleges two back-to-back health incidents for which she was entitled to FMLA leave: (1) her son's undisclosed illness, which required her to take a sick day on August 7, 2013; and (2) her own stomach virus on August 8th, for which she was taken to the hospital and subsequently excused from work on August 8th and 9th. Neither of these conditions qualifies as a serious health condition for purposes of the FMLA, because neither condition resulted in a period of incapacity of more than three consecutive calendar days as required by 29 C.F.R. § 825.115. Even combining the two periods, Liles still only missed three total days of work. Additionally, although Liles was treated in the emergency room on August 8th, she did not stay in the hospital overnight, and thus she did not receive "inpatient care" under 29 C.F.R. § 825.114. As such, accepting all of Liles's factual

---

[6] In enacting the FMLA, Congress empowered the Department of Labor to promulgate the regulations necessary to carry out the statute. 29 U.S.C. § 2654.

contentions as true, she nonetheless fails to state a claim under the FMLA.

**D. Claim Four(Material Misrepresentation)**

Liles's final claim is that her termination "stemmed from [Thorne's] material misrepresentations concerning its [sic] 'low employee morale' to where no such evidence existed nor was same investigated and/or documented as required by the employee handbook." [Doc. #2, p. 6]. It appears that claim four merely rephrases claim one, insofar as Liles is again claiming that a stated reason for her termination was pretextual and that defendant failed to follow its own procedures before terminating her. Accordingly, for the same reasons the court dismissed claim one, the court likewise finds claim four to be without merit.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that defendant's motion to dismiss, [Doc. #7], be and is hereby **GRANTED,** and that Liles's claims be and are hereby **DISMISSED WITH PREJUDICE.**

THUS DONE AND SIGNED in Shreveport, Louisiana, this ___1st___ day of ___May___, 2015.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE